THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| KATHLEEN R. FABIAN, ) <br> ) <br> *Plaintiff*, ) <br> v. ) <br> ) <br> LELAND DUDEK, in his official capacity as ) <br> Acting Commissioner of the United States Social ) <br> Security Administration,[1] ) <br> ) <br> *Defendant*. ) <br> ) | No. 23 C 16185 <br><br> Chief Judge Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kathleen Fabian seeks judicial review of the Social Security Administration (SSA) Commissioner's final decision regarding Fabian's application for disability insurance benefits, pursuant to 42 U.S.C. § 405(g). In March 2021, Fabian applied for disability insurance benefits, alleging a period of disability beginning on January 19, 2021, because of medical impairments, including Fabry disease, atrial fibrillation, high blood pressure, depression, and anxiety. (AR, Dkt. 9-1 at 241–43). On May 11, 2023, following a hearing, an Administrative Law Judge (ALJ) issued a partially favorable decision, finding that Fabian became disabled on January 26, 2023, more than two years after the onset date Fabian alleged.

Because the Appeals Council declined to review the ALJ's decision, (AR,[2] Dkt. 9-1 at 1), the Court reviews ALJ's decision as the Commissioner's final decision under § 405(g). *Tumminaro*

---

[1] Pursuant to Federal Rule 25(d), the Court orders that Leland Dudek, Acting Commissioner of the Social Security Administration, is substituted for Defendant Martin O'Malley, the former Acting Commissioner of the U.S. Social Security Administration. Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security[.]").
[2] "AR" refers to the Certified Administrative Record, (Dkts. 9-1, 9-2).

1

*v. Astrue*, 671 F.3d 629, 632 (7th Cir. 2011). Pending before the Court is the Commissioner's Motion for Summary Judgment, (Dkt. 13), asking the Court to affirm the Commissioner's decision. For the reasons below, the Court denies the Commissioner's Motion for Summary Judgment [13] and, pursuant to 40 U.S.C. 504(g), reverses the Commissioner's decision and remands the case to SSA for further proceedings consistent with this opinion.

## BACKGROUND

Fabian is a 60-year-old, Illinois resident with several medical conditions, including Fabry disease, atrial fibrillation, hearing loss, paroxysmal positional vertigo, lumbar spine degenerative disc disease, hypertension, depression, and anxiety. (AR, Dkt. 9-1 at 18, 238, 241, 250). Fabry disease is "a rare genetic disorder where an individual lacks sufficient amounts of enzymes to break down fats, marked by symptoms of hearing loss, numbness and pain, swelling of the feet and ankles, and pain during physical activity." (Dkt. 14 at 1, n.1) (citation omitted). Fabry disease affects multiple of Fabian's organs, including her heart, and the disease is further complicated by her hypertension. (AR, Dkt. 9-1 at 23; Dkt. 9-2 at 1582). Fabian stopped working on January 19, 2021, due to the worsening of her cardiac problems. (AR, Dkt. 9-1 at 18, 20). Fabian had previously worked full-time as a customer service agent at a uniform supply company since 2006. (AR, Dkt. 9-1 at 243). In that role, Fabian answered phones, made data entries, and took orders and complaints. (*Id.*)

## LEGAL STANDARD

Under § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Beiste v. Berryhill*, 587 U.S. 97, 103, (2019) (quoting *Consolidated Edison*

2

*Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The substantial evidence standard is a low bar for the evidentiary sufficiency of administrative decisions, *Thorton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025), but there must be "an adequate logical bridge from the evidence to the conclusions." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022). The Court does not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *Reynolds*, 25 F.4th at 473 (quoting *Gelatos v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). Ultimately, the Court "will reverse an ALJ's decision only if the record 'compels a contrary result[,]' " or if it is the result of an error of law. *Thorton*, 127 F.4th at 1081 (*Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021)); *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

## DISCUSSION

The upshot of the ALJ's decision is threefold: (1) prior to January 26, 2023, Fabian did not have an impairment or combination of impairments listed in or medically equivalent to an impairment listed in the SSA's Listing of Impairments, (Dkt. 9-2 at 20–21); (2) prior to January 26, 2023, Fabian, despite her medical impairments, had the residual capacity to perform relevant past work as an order clerk, (Dkt. 9-2 at 22–28); and (3) when Fabian received a Cochlear implant in her left ear on January 26, 2023, she presumptively became disabled for the year following the procedure under Special Sense and Speech Listing § 2.11. (AR, Dkt. 9-1 at 29–30).

Fabian contends that the ALJ's decision—finding that Fabian was not disabled from January 19, 2021 through January 26, 2023—was contrary to the evidence and the law. (Dkt. 1 ¶ 8). Specifically, Fabian argues the Court should reverse the Commissioner's decision for the following reasons: (1) the ALJ's step three analysis was inadequate; (2) the ALJ's finding of residual functional capacity prior to January 26, 2023 violated SSR 96-8p and was not supported

by substantial evidence; (3) the ALJ's evaluation of the medical opinion of treating physician Dr. Carolyn Jones violated 20 C.F.R. § 404.1520c; (4) the ALJ's evaluation of the medical opinion evidence of the state agency reviewing sources (Dr. Reddy and Dr. Billinghurst) was not supported by substantial evidence; and (5) the ALJ's evaluation of Fabian's symptoms violated SSR 16-3p and was not supported by substantial evidence. (Dkt. 10 at 6–16).

I.   **The ALJ's Step Three Analysis of Fabian's Hearing Loss**

While the ALJ decided that Fabian became disabled when she received her cochlear implant, a listed impairment under Listing § 2.11(a), on January 26, 2023, the ALJ failed to address the elephant in the room: Fabian's severe hearing loss that prompted the need for the implant in the first place. Specifically, Fabian argues that during the step three analysis, the ALJ failed to address whether her severe hearing loss qualifies as the listed impairment of hearing loss under Listing § 2.10. (Dkt. 10 at 6). At step three of the sequential evaluation process for Social Security Act claims, the ALJ asks whether a claimant has an impairment or combination of impairments listed in or medically equivalent to an impairment listed in the Listing of Impairments; if the claimant does have a listed impairment or an impairment medically equivalent to a listed impairment, the claimant is deemed disabled and the analysis stops there. 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments); 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 404.1526; *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003). Fabian contends that the ALJ failed to consider whether her hearing loss, prior to January 26, 2023, qualified as a listed impairment under the Special Sense and Speech Listing § 2.10. (Dkt. 10 at 6–11); 20 C.F.R. Part 404, Subpart P, Appendix 1, § 2.10.

Under Listing § 2.10, hearing loss "not treated with cochlear implantation"[3] is listed when a claimant shows either:"

> A. An average air conduction hearing threshold of 90 decibels or greater in the better ear and an average bone conduction hearing threshold of 60 decibels or greater in the better ear (*see* 2.00B2c).
> OR
> B. [a] word recognition score of 40 percent or less in the better ear determined using a standardized list of phonetically balanced monosyllabic words (*see* 2.00B2e).

20 C.F.R. Part 404, Subpart P, Appendix 1, § 2.10.

Fabian is correct that the ALJ's decision fails to even mention Listing § 2.10 in his step three analysis, despite acknowledging that Fabian's hearing loss is a severe impairment. (Dkt. 9-2 at 18–20). Even charitably assuming the ALJ considered Listing § 2.10 without mentioning it, which seems implausible given that he discusses what he says are "all [the] applicable listings," (AR, Dkt 9-2 at 20), the ALJ's failure to mention Listing § 2.10, in the context of his inadequate consideration of the evidence documenting Fabian's severe hearing loss discussed below, leaves the Court "with grave reservations as to whether the ALJ adequately assessed the criteria of the listing[.]" *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) ("In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing."); *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003).

And while the results of the May 2022 hearing test did not support a finding that Fabian's hearing loss is a listed impairment under Listing § 2.10(b), (AR, Dkt. 9-2 at 1070), Fabian presented more recent evidence, the August 2022 hearing exam, the results of which strongly

---

[3] "A cochlear implant is [an] electronic device that provides sound by directly stimulating the surviving auditory nerve fibers in the inner ear." *Bd. of Educ. of City of Chicago v. Illinois State Bd. of Educ.*, 2006 WL 2989289, at *2 (N.D. Ill. Oct. 18, 2006).

suggests that Fabian's word recognition scores qualified her severe hearing loss as a listed impairment under § 2.10(b) prior to January 26, 2023. (AR, Dkt. 9-2 at 1584–86). The Commissioner's brief, like the ALJ's decision, fails to account for the more recent results of the April 2022 hearing test, relying exclusively on the results of the May 2022 hearing exam to contend that Listing § 2.10 is inapplicable. (Dkt. 14 at 2–3).

Specifically, while the May 2022 notes show Fabian had "excellent word recognition in both ears" according to the May 2022 evaluation, (AR, Dkt. 9-1 at 25–26), the ALJ fails to adequately address the results of the August 2022 testing, which showed that Fabian had a left ear speech perception score of *zero percent* and a right ear speech perception score of only *thirty-two percent*. (AR, Dkt. 9-2 at 1582–86). The results of the August 2022 test, on their face, satisfy one of the disjunctive requirements for her hearing loss to qualify as a listed impairment under Listing § 2.10(b). (AR, Dkt. 9-2 at 1582–84); 20 C.F.R. Part 404, Subpart P, Appendix 1, § 2.10. Worse than merely a "perfunctory analysis of the listing[,]" the ALJ's decision overlooks the listing as well as crucial test results, which suggest that Fabian became disabled earlier than the onset date decided by the ALJ, January 26, 2023. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004).

Moreover, the audiologist who administered the August 2022 test noted that Fabian's speech perception scores were "significantly worse" than "Medicare's more strict criteria of 40% or worse speech perception score in the best aided condition[,]" and that her results "meet the FDA-approved Cochlear America single sided deafness candidacy criteria of severe to profound sensorineural hearing loss." (AR, Dkt. 9-2 at 1582–84, 1589). The audiologist further commented that the August 2022 evaluation revealed that Fabian suffered from "mild sloping to profound sensorineural loss" of hearing in her right ear. (Dkt. 9-2 at 1854). The ALJ also failed to address other significant evidence in the record, including medical records describing that in August 2022

6

Fabian was hospitalized for two days due to a sudden decrease in hearing in her left ear caused by tinnitus, and that Fabian suffered from a "dead ear" in November 2022. (AR, Dkt. 9-2 at 1582, 1794).

The ALJ's sole reference to the August 2022 test is made as an aside in the discussion of Fabian's cochlear implant procedure as a listed impairment. (Dkt. 9-1 at 29). Moreover, the ALJ's sole reference to the August 2022 test wholly omits the information relevant to the requirements of Listing § 2.10(b) by stating that Fabian's word perception ability dropped below 60 percent (leaving open the possibility that were outside the Listing §2.10(b) requirement), (AR, Dkt. 9-1 at 29), when the results showed that her word perception ability in both ears dropped below *40* percent. (AR, Dkt. 9-2 at 1582–84). So while the ALJ acknowledged that in August 2022, Fabian was suffering from tinnitus in both ears, sensorineural hearing loss, vertigo, and dizziness, the ALJ failed to logically and accurately take account of the extent of Fabian's hearing loss while analyzing whether she had any listed impairments, her residual functional capacity, and her capacity to perform relevant past work. *Reynolds*, 25 F.4th at 473. And as Fabian argues, even if the August 2022 test results did not satisfy Listing § 2.10(b), the ALJ also failed to address whether her hearing loss, considered in combination with her Fabry disease (which commonly causes hearing loss), vertigo, and tinnitus, (AR, Dkt. 9-1 at 1582–84), was medically equivalent to the hearing loss impairment listed in Listing § 2.10. (Dkt. 10 at 8); 20 C.F.R. § 404.1526(a)(1)(i)(B); (AR, Dkt. 9-2 at 1943). Additionally, the SSR 17-2p required the ALJ to "consider all evidence in making a finding that [Fabian's] impairment(s) does not medically equal a listing." *See also* 20 C.F.R. §404.1526(c). The ALJ's misplaced reliance on the May 2022 hearing test and failure to accurately summarize the results of August 2022 hearing test was not a sufficient articulation of his "assessment of the evidence to assure [the Court] that [he] considered the important

evidence[.]" *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (quoting *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir.1999)).

By broadly concluding that Fabian's "statements concerning the intensity, persistence[,] and limiting effects of [her] symptoms, [including those related to her severe hearing loss,] are not fully supported prior to January 26, 2023[,]" without engaging in any meaningful analysis of the contrary evidence detailing Fabian's severe hearing loss, the ALJ "actually ignored the available evidence and failed to explain his conclusion." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 540 (7th Cir. 2003). Furthermore, "[w]hale under no obligation to 'discuss every piece of evidence in the record,' an ALJ may not 'ignore a line of evidence supporting a finding of disability.'" *Thorton*, 127 F.4th at 1082 (quoting *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021)).

By failing to discuss the evidence of Fabian's severe hearing loss and how that evidence can logically coexist with the ALJ's conclusions at step three (whether Fabian had a listed impairment) and step four (the extent of Fabian's residual functional capacity and capacity to perform relevant past work), the ALJ failed to "confront the evidence that does not support [his] conclusion and explain why that evidence was rejected." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). By making almost exclusively vague references to Fabian's "hearing loss," "hearing problems," and "hearing decrease," (AR Dkt. 9-1 18, 27, 29), and by failing to discuss the evidence of Fabian's severe hearing loss, the ALJ "omitted evidence" that revealed "substantially different information about [Fabian's hearing] problems" prior to January 26, 2023. *Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021).

There is a tremendous difference between explaining why the evidence detailing that August 2022, Fabian was deaf in her left ear and had a speech recognition score below 40% in her right ear does not undermine the conclusion that Fabian was not disabled prior to January 26, 2023,

8

on the one hand, and failing to mention any evidence detailing the severity of Fabian's hearing loss before briefly mentioning that Fabian's "hearing test results showed speech recognition in the left significantly worsened to below 60%" as an aside in the last, unrelated section about the cochlear implant operation being a listed impairment. These were not "slight" omissions, *Saul*, 994 F.3d at 789, but omissions that construct "a skewed version of the evidence." *Moore*, 743 F.3d at 1123 ("[T]he ALJ erred in utterly failing to even acknowledge the contrary evidence or to explain the rationale for crediting the identified evidence over the contrary evidence.").

Accordingly, the Court therefore reverses the ALJ's decision with respect its step three finding that, prior to January 26, 2023, Fabian did not that have an impairment or combination of impairments listed in or medically equivalent to a listed impairment and remands the case to SSA for consideration of whether Fabian's hearing loss, prior to January 26, 2023, independently or in combination with her other impairments, falls within Listing § 2.10.

## II. The ALJ's Assessment of Fabian's Residual Functional Capacity and Capacity to Perform Relevant Past Work

At step four of the sequential evaluation process for Social Security Act claims, the ALJ assesses the claimant's residual functional capacity and capacity to perform past relevant work; if the claimant can still perform past relevant work, then the claim is deemed not disabled. 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments); 20 C.F.R. § 404.1520(a)(4)(iv); *Barnhart*, 540 U.S. at 24–25.

The ALJ concluded that, prior to January 26, 2023, Fabian had the residual functional capacity to perform light work, as defined by 20 C.F.R. § 404.1567(b). (AR, Dkt. 9-2 at 22). The ALJ further concluded that, prior to January 26, 2023, Fabian had the capacity to perform relevant past work as an order clerk, an employee that processes merchandise orders. (AR, Dkt. 9-2 at 28). Contrary to the Commissioner's assertion that Fabian does not identify the limits she claims the

9

ALJ failed to account for in determining her residual functional capacity, (Dkt. 14 at 4), Fabian explicitly argues that the ALJ failed to adequately consider how her severe hearing loss and the resulting communicative, social, and functional limitations substantially impair her ability to work in her prior role as an office clerk, which is a position that requires a significant amount of verbal and phone communication. (Dkt. 10 at 7–8). The ALJ also does not address the evidence in the record that Fabian reported to her doctors that prior to January 26, 2023, her hearing loss limited her social life, caused her to talk on the phone less, and caused her difficulty in hearing and understanding coworkers, clients, and customers. (AR, Dkt. 9-2 at 1582).

While the ALJ initially acknowledges that Fabian's hearing loss was a severe impairment that significantly limited her ability to perform basic work activities, (AR, Dkt. 9-2 at 18), the ALJ does not address, at any point, how Fabian's hearing loss, prior to January 26, 2023, factors into his analysis of her ability to perform relevant past work, including as an order clerk, especially in light of the record of a prior doctor's recommendation that she limit her phone usage. (AR, Dkt. 9-1 at 337). Instead, the ALJ's sole mention of Fabian's hearing loss in this section is the statement, completely unrelated to the relevant past work, that "[d]use to her hearing loss . . . she should avoid concentrated use of hazardous machinery and concentrated exposure to unprotected heights." (AR, Dkt. 9-1 at 27). The ALJ's failure to adequately account for Fabian's severe hearing loss renders the ALJ's sweeping conclusions that Fabian maintained the capacity to perform relevant past work as an order clerk contrary to the record.

Accordingly, the Court therefore reverses the ALJ's decision with respect to its step four finding that Fabian had the residual capacity to perform relevant past work as an order clerk, prior to January 26, 2023, for failure to adequately consider the evidence of Fabian's hearing loss, and

remands the case to SSA for consideration of how Fabian's hearing loss, prior to January 26, 2023, affected her residual functional capacity and capacity to perform relevant past work.[4]

## CONCLUSION

For the reasons above, the Court denies the Commissioner's Motion for Summary Judgement [13], reverses the Commissioner's decision, and remands for additional proceedings consistent with this opinion.

_____
Virginia M. Kendall
United States District Judge

Date: March 30, 2025

---

[4] Because the Court finds grounds for reversal above, the Court declines to consider Fabian's contentions regarding the ALJ's evaluation of the medical opinion evidence and the ALJ's evaluation of Fabian's other symptoms. (Dkt. 10 at 11–16).

11